## MARRS v BOARD OF MEDICINE

Docket No. 73499. Decided October 7, 1985. On application by the defendant for leave to appeal and by the plaintiff for leave to cross-appeal, the Supreme Court, in lieu of granting leave to appeal, reversed the judgment of the Court of Appeals insofar as it modified the suspension of the plaintiff's license to practice medicine and reinstated the order of the Ingham Circuit Court affirming the decision of the Board of Medicine.

Jack W. Marrs, M.D., filed a petition in the Ingham Circuit Court for review of a final order of the Board of Medicine adopting findings of fact and conclusions of law by a hearing officer, suspending Dr. Marrs' license to practice medicine for one year, and imposing other restrictions. The court, Michael G. Harrison, J., affirmed the board's order. The Court of Appeals, J. H. GILLIS, P.J., and D. E. HOLBROOK, JR., and ERNST, JJ., upheld all the sanctions imposed upon Dr. Marrs, but shortened the suspension period to one month, concluding that the board had abused its discretion in imposing the one-year suspension (Docket No. 68848). The board appeals and the plaintiff cross-appeals.

In an opinion per curiam, signed by Chief Justice WILLIAMS, and Justices RYAN, BRICKLEY, CAVANAGH, and RILEY, the Supreme Court *held:*

The Court of Appeals clearly erred in finding an abuse of discretion on the facts of the case. Generally, in reviewing an agency decision, a court must hold as unlawful and set aside a decision or order of an agency which results in prejudice of a petitioner's substantial rights where the decision: violates the constitution or a statute; exceeds the agency's jurisdiction; involved an unlawful procedure which resulted in material prejudice of a party; is not supported by competent, material, and substantial evidence on the whole record; is arbitrary, capricious, or clearly an abuse or unwarranted exercise of discretion; or was affected by other substantial and material errors of law. In a civil matter, unless an exercise of discretion resulted in a determination that is so palpably and grossly violative of fact and logic that it evidences not the exercise of will, but perversity of will, not the exercise of judgment, but of defiance of judgment, not the exercise of reason, but rather the

exercise of passion or bias, a reviewing court has no authority to substitute what it believes to be a sounder sanction for the discipline imposed by the agency.

The fact that the Board of Medicine in this case was not sufficiently persuaded by the mitigating factors presented by Dr. Marrs to impose less than a one-year suspension does not mean that the board did not consider these factors. There was sufficient evidence presented for the board to conclude that Dr. Marrs had been an habitual violator of the Medical Practice Act and that all the sanctions imposed were justified. The showing by Dr. Marrs at an informal hearing prior to the filing of the complaint of compliance with all lawful requirements for retention of a license to practice medicine and the showing that the practices objected to had ceased and were not likely to recur, did not require dismissal of the complaint. The purpose of the informal proceeding is to provide an opportunity to dispute unwarranted charges prior to the initiation of formal proceedings.

Justice LEVIN, writing separately, stated that this is not an appropriate case for peremptory disposition. Leave to appeal to the Supreme Court should either be granted or denied or the decision of the Court of Appeals should be vacated and the case remanded to the Court of Appeals to consider whether, after it determined that the discipline imposed by the Board of Medicine was excessive, it could substitute its judgment concerning the appropriate discipline or whether it should return the case to the Board of Medicine with a direction to impose less severe discipline.

Justice BOYLE separately concurred in part with Justice LEVIN.

Affirmed in part and reversed in part.

129 Mich App 559; 341 NW2d 543 (1983) affirmed in part and reversed in part.

*McGinty, Brown, Jakubiak, Frankland & Hitch, P.C.* (by *Vittorio E. Porco*), for the plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Gay S. Hardy,* Assistant Attorney General, for the defendant.

PER CURIAM. We are required in this case to determine whether the Court of Appeals erred in shortening substantially a one-year suspension im-

posed by the Michigan Board of Medicine on a physician found to have violated the Medical Practice Act and the so-called amphetamine rule.

I

On July 12, 1979, the Attorney General filed a formal complaint against Jack W. Marrs, M.D., charging the physician with violating the amphetamine rule, 1978 AACS, R 338.2302, in prescribing amphetamines to two patients, G.S. and S.S., and with violating the Medical Practice Act, MCL 338.1801 *et seq.;* MSA 14.542(1) *et seq.,*[1] in regard to accepted minimal standards of treatment as to those same two patients.

A formal hearing on the complaint against Dr. Marrs was held on July 16, 1980. At the conclusion, the hearing officer found that the physician had committed the following violations of the amphetamine rule:

1. Licensee did not properly record the blood pressures, pulse, and checking of the heart and lungs of either G.S. or S.S.;

2. Licensee did not properly record the weight of G.S.;

These first two violations contravene Rules 3(1)(a) and 3(1)(e) of the Amphetamine Rule.

3. Rule 3(1)(d) was violated in that Licensee did not stop dispensing Desoxyn after noting that S.S. was actually gaining weight over the course of her treatment.

4. Rule 3(1)(f) was violated in that Licensee did not discontinue use of amphetamines for 90 days after having prescribed them for 90 continuous prior days.

---

[1] This statute was repealed by 1978 PA 368; MCL 333.1101 *et seq.;* MSA 14.15(1101) *et seq.,* effective September 30, 1978. The complaint against Dr. Marrs concerned violations alleged to have occurred between March 1977 and September 1978.

As to the question of acceptable minimal standards, the hearing officer found the following violations of the Medical Practice Act:

> 1. Section 11(1)(2)(b), which sets up as a violation the failure to use reasonable care and discrimination in the administration of drugs, and failure to employ acceptable scientific methods in the selection of drugs. While Licensee's motives may have been admirable, the more persuasive testimony is that the length of the prescribing period, coupled with the additive effects of multiple drug use were not reasonable under the circumstances.
>
> 2. Section 11(1)(2)(c) in the limited sense of ". . . prescribing drugs for other than . . . legitimate therapeutic purposes." There is no contention anywhere that Licensee acted illegally, or that the drugs prescribed were intended for or got into the hands of other people. This Hearing Examiner finds persuasive the testimony of Dr. Toteff to the effect that the number and combination of drugs could not be defended as legitimately thereapeutic [*sic*].
>
> 3. Section 11(1)(2)(i), pertaining to conforming to minimal standards of acceptable medical practice. In relation to both the prescribing and the recordkeeping, Licensee did not conform to minimally acceptable standards of practice in his area for 1977-1978. Combining drugs in this fashion is potentially dangerous and calls for the strictest monitoring and recordkeeping.

The Board of Medicine, after accepting substantially all of the hearing officer's findings of fact and conclusions of law, reprimanded Dr. Marrs, suspended his license to practice medicine for one year, and ordered that during the suspension he earn forty hours of board-approved continuing medical education credit in the areas of pharmacology and therapeutics as well as pursue other required continuing medical education. The board

further ordered that, upon reinstatement, Dr. Marrs be issued a limited license of not less than two years, during which time he could not obtain, possess, prescribe, dispense, or administer any controlled substance under the Public Health Code or federal law. He also would be prohibited from applying for or obtaining a controlled substance license under Michigan or federal law and would be required to successfully complete two years of probation.

Dr. Marrs appealed the Board of Medicine's decision to the Ingham Circuit Court, which affirmed the board's decision and dissolved a preliminary injunction which had stayed the board's final order. Thereafter, Dr. Marrs pursued his appeal in the Court of Appeals, which granted the physician's motion to continue the preliminary injunction and stay the final order of the Ingham Circuit Court. The Court of Appeals affirmed in part the order of the board and modified it in part. The Court of Appeals upheld all sanctions imposed upon Dr. Marrs except for the one-year suspension of his license to practice medicine. The suspension period was shortened to one month, with the physician being given credit for three weeks of suspension already served. The board's application for rehearing was subsequently denied.

The board applied to this Court for leave to appeal the decision of the Court of Appeals. Thereafter, Dr. Marrs applied for leave to cross-appeal.

II

The Court of Appeals basically concluded that the one-year suspension imposed by the Board of Medicine should be shortened because the board abused its discretion in imposing such severe discipline. The Court agreed with Dr. Marrs that the

board had failed to consider the numerous mitigating factors present in his case. The Court found that the record showed that prior to this complaint Dr. Marrs had an excellent record as a physician: He had never been sued for malpractice, at all times had acted in good faith, and did attempt to limit the amount of drugs he prescribed to the two patients at issue. The Court opined, however, that it perhaps would have been better judgment to have refused further medication altogether. In light of these mitigating factors and the other discipline imposed, the Court of Appeals stated that the one-year suspension of Dr. Marrs' license was an abuse of discretion because the primary goal of discipline, *i.e.,* protection of the public, had already been satisfied by the other sanctions.

We agree with the Board of Medicine that the Court of Appeals clearly erred in finding an abuse of discretion on the facts of this case. The Administrative Procedures Act, MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.,* governs the proceedings. Section 106 provides, concerning review of an agency decision:

> (1) Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:
> (a) In violation of the constitution or a statute.
> (b) In excess of the statutory authority or jurisdiction of the agency.
> (c) Made upon unlawful procedure resulting in material prejudice to a party.
> (d) Not supported by competent, material and substantial evidence on the whole record.
> (e) *Arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion.*

(f) Affected by other substantial and material error of law.

(2) The court, as appropriate, may affirm, reverse or modify the decision or order or remand the case for further proceedings. [MCL 24.306; MSA 3.560(206). Emphasis added.]

In *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959), this Court set forth the standard for reviewing a claim of abuse of discretion in a civil matter:

The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.

In the years since the *Spalding* decision, although the standard regarding abuse of discretion has been often discussed and frequently paraphrased, it has remained essentially intact.

Our review of the record does not lead us to conclude as did the Court of Appeals that the Board of Medicine failed to consider the numerous mitigating factors present in this case. The fact that the board was not sufficiently persuaded by the mitigating factors to impose less than a one-year suspension does not mean that the board did not consider the factors. Rather, it may mean that the board considered the proven violations, themselves, so grave as to warrant being dealt with severely. Indeed, as the Ingham Circuit Court noted, there was extensive testimony concerning the ways in which Dr. Marrs' practice did not

conform to prevailing minimal professional standards. As the circuit court further noted, there was sufficient evidence for the board to conclude that Dr. Marrs had been an habitual violator of the Medical Practice Act.

The Court of Appeals seemed to put much emphasis on the idea that the primary goal of discipline is protection of the public, and the supposition that it is unlikely that Dr. Marrs would repeat the violations because he now limits his practice almost exclusively to general surgery. In *In the Matter of Grimes,* 414 Mich 483; 326 NW2d 380 (1982), this Court discussed the purpose of discipline in an attorney misconduct case. We stated in the context of that case that "protection" and "punishment" are not irreconcilable concepts, but rather that protection of the public may at times best be achieved through the deterrent effect of punishment. We reaffirm that belief.

On the facts before us, we are convinced that the Court of Appeals clearly erred in finding an abuse of discretion on the part of the Board of Medicine in imposing a one-year suspension on Dr. Marrs. The *Spalding* standard not having been met, the Court had no authority to substitute what it believed to be a sounder sanction for the discipline imposed by the board.

III

In his application for leave to cross-appeal, Dr. Marrs contends that the showing of compliance he made at an informal hearing held prior to the filing of the complaint was sufficient to require cessation of the proceedings against him. MCL 24.292; MSA 3.560(192), provides in pertinent part:

Before the commencement of proceedings for

suspension, revocation, annulment, withdrawal, recall, cancellation or amendment of a license, an agency shall give notice, personally or by mail, to the licensee of facts or conduct which warrant the intended action. The licensee shall be given an opportunity to show compliance with all lawful requirements for retention of the license.

Dr. Marrs contends that upon his showing that the practices objected to had ceased and that there was no likelihood of repetition, the proceedings against him should have been dismissed. We agree with the Court of Appeals interpretation of the applicable statutory provision, that is, the purpose of the informal proceedings is to provide an opportunity to dispute unwarranted charges prior to the initiation of formal proceedings. Thus, MCL 24.292; MSA 3.560(192) is a procedural safeguard. We disagree with Dr. Marrs that upon a showing by the licensee that violations have ceased and that regulations will be followed in the future the board is required to dismiss the complaint. Although the board has the option of terminating proceedings, it is not obligated to do so.

IV

For the reasons stated, pursuant to MCR 7.302(F)(1), in lieu of granting leave to appeal, we reverse the decision of the Court of Appeals insofar as it modified the one-year suspension of Dr. Marrs' license to practice medicine and reinstate the order of the Ingham Circuit Court, which affirmed the decision of the Board of Medicine. In all other respects, we affirm the decision of the Court of Appeals.

WILLIAMS, C.J., and RYAN, BRICKLEY, CAVANAGH, and RILEY, JJ., concurred.

LEVIN, J. (*separate opinion*). We would either (i) grant or deny leave to appeal, or (ii) vacate the decision of the Court of Appeals and remand to it to consider whether the Court of Appeals, having determined that the discipline imposed by the Board of Medicine was excessive, may substitute its judgment concerning the appropriate discipline or, rather, should have returned the cause to the Board of Medicine with the direction to impose a discipline which is not so excessive.

I

In the Court of Appeals, the Board of Medicine argued that the board's decision to suspend Dr. Marrs' license for a period of one year did not constitute an abuse of discretion by the board. The Court of Appeals determined that the discipline imposed was excessive and indicated that imposition of the excessive discipline constituted an abuse of discretion.

The Attorney General's application for leave to appeal to this Court does not contend that the Court of Appeals erred in finding an abuse of discretion, but rather that, having reached the conclusion that there was an abuse of discretion, the Court of Appeals may not substitute its judgment regarding the discipline to be imposed.[1]

There is no discussion in the application for

---

[1] The Attorney General argued in the application for leave to appeal to this Court:

"The integrity of the administrative process demands that the Board, not a reviewing court, exercise the discretionary judgment which the legislature has entrusted to it. If the reviewing court concludes that an agency vested with broad discretion to fashion sanctions has abused that discretion, remand to the agency for reconsideration, not redetermination of the sanction by the court, is ordinarily the reviewing court's proper course.

"Thus, had the Court of Appeals in the Marrs case followed the proper course, it would have, upon a finding of abuse of discretion by

leave to appeal of the standard for determining whether the board abused its discretion.[2]

The opinion of the Court, thus, reverses the judgment of the Court of Appeals on an issue not raised or argued in the application for leave to appeal[3] and ignores the only issue raised in this Court by the Attorney General: whether the Court of Appeals should have remanded the case to the Board of Medicine for imposition of a less severe discipline and erred in substituting its judgment regarding the extent of the discipline.[4]

---

the Board, remanded the case to the Board for reconsideration to address the mitigating circumstances testified to by Marrs.

"The case authority is abundantly clear that the Court of Appeals' action in usurping the function of the Board rather than remanding was an exercise of administrative authority that the Court of Appeals did not possess. Although 1969 PA 306, § 106 [MCL 24.306; MSA 3.560(206)] reads that the court may modify an agency's decision, it is a recognized principle of administrative law that such language does not authorize a reviewing court to exercise an essentially administrative function, or, as in the Marrs case, to determine a sanction or administratively determined remedy."

[2] *Spalding v Spalding,* 355 Mich 382; 94 NW2d 810 (1959), relied on in the opinion of the Court and cited by the Attorney General in the Court of Appeals, is not cited in the application for leave to appeal, probably because the Attorney General makes no claim in this Court that the Court of Appeals erred in finding an abuse of discretion.

[3] The opinion of the Court states:

"*We agree with the Board of Medicine* that the Court of Appeals clearly erred in finding an abuse of discretion on the facts of this case." (Emphasis added.)

The foregoing statement is inaccurate because the board made no such argument.

[4] The Attorney General cites, among other cases, the decision of the New York Court of Appeals in *Ahsaf v Nyquist,* 37 NY2d 182; 371 NYS2d 705; 332 NE2d 880 (1975).

See also *Federal Power Comm v Idaho Power Co,* 344 US 17, 19-20; 73 S Ct 85; 97 L Ed 15 (1952); *Nightingale v State Personnel Bd,* 7 Cal 3d 507, 514-516; 102 Cal Rptr 758; 498 P2d 1006 (1972); *O'Donnell v Bassler,* 289 Md 501, 509-511; 425 A2d 1003 (1981). *Skold v Johnson,* 29 Wash App 541, 549-551; 630 P2d 456 (1981).

Marrs cites *Poirier v Dep't of Health & Rehabilitative Services,* 351 So 2d 50, 55 (Fla App, 1977), for the proposition that a reviewing court can modify an administrative sanction.

See also *Feliciano v Illinois Racing Bd,* 110 Ill App 3d 997, 1004-1005; 443 NE2d 261 (1982); *Mayflower Securities Co, Inc v Bureau of*

II

The opinion of the Court does not address Dr. Marrs' argument that the discipline imposed by the board was arbitrary in light of the discipline imposed in other cases by the board.[5]

III

Leave to appeal might appropriately be denied simply because the argument advanced in this Court by the Attorney General was not advanced by him in the Court of Appeals. Alternatively, if the Court believes that the Attorney General's argument should be addressed, it should remand to the Court of Appeals for consideration of that argument before this Court addresses the question.

IV

The issues dealt with in the opinion of the Court —the correct reviewing standard[6] and the construction of § 92 of the Administrative Procedures

Securities, 64 NJ 85, 92-94; 312 A2d 497 (1973); *Arkansas State Bd of Pharmacy v Patrick,* 243 Ark 967, 973-975; 423 SW2d 265 (1968). *Cf. Arkansas State Bd of Pharmacy v Isely,* 13 Ark App 111, 115-116; 680 SW2d 718 (1984), recognizing the authority of a court to modify a penalty assessed under the Arkansas Administrative Procedures Act if it is found to be unduly harsh or unreasonable, but remanding to the board for a redetermination of the penalty.

[5] The Court of Appeals found no need, in light of its disposition, to address that argument.

[6] The opinion of the Court adopts the reviewing standard stated in *Spalding v Spalding,* 355 Mich 382; 94 NW2d 810 (1959), stating that is the standard "in a civil matter." The dictum of *Spalding v Spalding* has indeed been reiterated in a wide variety of situations, civil and criminal, with little thought to whether what was stated by this Court in *Spalding,* when reviewing an appeal from a child-support order, has application in other contexts. See *People v Talley,* 410 Mich 378, 396; 301 NW2d 809 (1981) (LEVIN, J., *concurring*).

While courts generally, in construing the language of state and federal administrative procedures acts, limit the scope of judicial review, no court has gone as far as this Court does today—in assimi-

Act[7]—have not previously been considered by this Court. Assuming, even, that the reviewing standard question is before us—it is not—that question and the § 92 constructional question should not be decided by this Court for the first time without plenary consideration.[8]

This state's Administrative Procedures Act[9] is modeled on a uniform act.[10] It appears on examination of the case law in other jurisdictions that there are differing views regarding the correct construction of the relevant language respecting both the reviewing standard[11] and the § 92 con-

lating the standard stated in *Spalding v Spalding*—in foreclosing judicial review of administrative agency action. This is, I believe, especially inappropriate in light of the higher standard apparently imposed by this state's constitution. See n 13 and accompanying text and *Michigan Employment Relations Comm v Detroit Symphony Orchestra, Inc*, 393 Mich 116; 223 NW2d 283 (1974).

[7] MCL 24.292; MSA 3.560(192).

[8] *People v Hastings*, 422 Mich 267; 373 NW2d 533 (1985) (Levin, J., *concurring*).

[9] Administrative Procedures Act of 1969, MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*

[10] Model State Administrative Procedures Act, 14 ULA 357 *et seq.*

[11] Section 106(e) states the reviewing standard as whether the action of the administrative agency was "[a]rbitrary, capricious or clearly an abuse or unwarranted exercise of discretion." This language has been given differing constructions in other jurisdictions.

Judge Friendly discusses two different meanings of the term "abuse of discretion" as found in the federal administrative act. *Wong Wing Hang v Immigration and Naturalization Service*, 360 F2d 715 (CA 2, 1966). One is a sort of "clearly erroneous" concept. The second is that discretion is deemed to be abused only when the action " 'is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view' under discussion." Judge Friendly adopts the second, narrower meaning of "abuse of discretion" and sets forth the standard as whether the decision were made "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as an invidious discrimination against a particular race or group, or . . . on other 'considerations that Congress could not have intended to make relevant.' " *Id.* at 718-719.

The United States Supreme Court construed this language to mean that a reviewing court would find an agency rule to be "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect

structional question.[12] If the Court wishes to speak to these questions—not heretofore addressed by this Court—it should grant leave to appeal so that relevant case law from other jurisdictions construing this language may be considered before this Court expresses an opinion on this question.

---

of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfg Ass'n v State Farm Mutual Automobile Ins Co,* 463 US 29, 43; 103 S Ct 2856; 77 L Ed 2d 443 (1983).

The California courts state that the test of whether an administrative body acted within its discretion in imposing a penalty is whether "reasonable minds might differ" regarding the propriety of the penalty imposed. *Cooper v Bd of Medical Examiners,* 49 Cal App 3d 931, 949-950; 123 Cal Rptr 563 (1975); *Harris v Alcoholic Beverage Control Appeals Bd,* 62 Cal 2d 589, 593-594; 43 Cal Rptr 633; 400 P2d 745 (1965).

New York courts have ruled that agency action is "arbitrary" when it is "without sound basis in reason and is generally taken without regard to the facts" and, particularly with regard to the imposition of penalties, when it is "shocking to one's sense of fairness." *Pell v Bd of Ed,* 34 NY2d 222, 230-231; 356 NYS2d 833; 313 NE2d 321 (1974).

[12] Professor Cooper has suggested that this language should "be construed as meaning also that the license may not be revoked if the licensee can make a showing that after having received notice of threatened revocation, he has corrected the deficiencies noted and achieved compliance with all lawful requirements (although, of course, in cases involving wilful misconduct it would be expected that a mere promise of reformation would not necessarily be sufficient to stave off revocation)." 2 Cooper, State Administrative Law, pp 496-497.

In *Rogers v Cosmetology Bd,* 68 Mich App 751; 244 NW2d 20 (1976), the Court of Appeals declared that § 92 required an informal opportunity to show compliance. In apparent accordance with Professor Cooper's suggestion, it is stated in a footnote that "[i]f at the informal stage the licensee offers to correct violations, or offers proof that no violations were committed, the board would presumably not hold the hearing. We do not face the question of the board's obligation to discontinue the proceedings upon an offer of compliance by a licensee." *Id.* at 754, n 1.

The United States Court of Appeals for the First Circuit also suggests that a show of future compliance by a nonhabitual offender may be sufficient to prevent revocation of the license in saying, with reference to the APA rule, that it "may well allow the dog one bite; it does not sanction the habit." *H P Lambert Co v Secretary of Treasury,* 354 F2d 819, 821, n 2 (CA 1, 1965).

V

Although Marrs has not contended that Const 1963, art 6, § 28[13] imposes a higher standard of review than that set forth in § 106[14] of the Admin-

---

[13] "All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law." Const 1963, art 6, § 28.

[14] "Sec. 106. (1) Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:

"(a) In violation of the constitution or a statute.

"(b) In excess of the statutory authority or jurisdiction of the agency.

"(c) Made upon unlawful procedure resulting in material prejudice to a party.

"(d) Not supported by competent, material and substantial evidence on the whole record.

"(e) Arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion.

"(f) Affected by other substantial and material error of law.

"(2) The court, as appropriate, may affirm, reverse or modify the decision or order or remand the case for further proceedings." MCL 24.306; MSA 3.560(206).

The foregoing language is modeled upon § 15(g) of the Revised Model State Administrative Procedure Act. 14 ULA at 431.

"§ 15(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

"(1) in violation of constitutional or statutory provisions;

"(2) in excess of the statutory authority of the agency;

"(3) made upon unlawful procedure;

"(4) affected by other error of law;

"(5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

istrative Procedures Act, the opinion of the Court might be read as foreclosing recognition of such a higher standard. Once again, it is, I think, clear that this is not an appropriate case for peremptory disposition.

BOYLE, J. I agree with parts I, II, and III of Justice LEVIN's opinion.

"(6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

The corresponding federal provision stating the scope of review is 5 USC 706:

"§ 706. Scope of review

"To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.

"The reviewing court shall—

"(1) compel agency action unlawfully withheld or unreasonably delayed; and

"(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

"(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

"(B) contrary to constitutional right, power, privilege, or immunity;

"(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

"(D) without observance of procedure required by law;

"(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

"(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

"In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error. (Sept. 6, 1966, PL 89-554, § 1, 80 Stat 393.)"