PALO GROUP FOSTER CARE, INC v DEPARTMENT OF SOCIAL
SERVICES

Docket No. 195227. Submitted February 4, 1998, at Grand Rapids. Decided
February 20, 1998, at 9:00 A.M. Leave to appeal sought.

Palo Group Foster Care, Inc., was advised by the Department of
Social Services that its license to operate an adult foster care home
would not be renewed. Following an informal conference, the
department mailed Palo notice of the decision to refuse to renew
Palo's license. The refusal, pursuant to § 22 of the Adult Foster
Care Facility Licensing Act, MCL 400.722(1); MSA 16.610(72)(1),
was based on alleged wilful and substantial violations of the act.
Following affirmance of that action by a hearing referee and an
administrative appeal, Palo appealed to the Kent Circuit Court. The
court, H. David Soet, J., affirmed. Palo appealed by leave granted.

The Court of Appeals *held*:

1. The appropriate standard of review by the circuit court in an
appeal from the department's decision under MCL 400.725; MSA
16.610(75) is review de novo. The circuit court did use a de novo
standard of review.

2. The fact that the department arguably violated its internal pol-
icy manual by denying Palo the opportunity to show at an informal
hearing that it had corrected or had plans to correct the violations
is not a basis for reversal. Section 92 of the Administrative Proce-
dures Act, MCL 24.292; MSA 3.560(192), does not allow a licensee
to avoid an adverse license action whenever compliance is shown
by correction of the license violations in question.

3. Palo's claims that it was denied a license because of bias and
prejudice are purely speculative and unsupported by any evidence.

4. Palo's claim that the hearing referee and the circuit court
exceeded the scope of review by considering alleged license viola-
tions that occurred before Palo's last license renewal in 1991 does
not provide a basis for reversal. The record shows that the depart-
ment also relied on numerous violations that occurred after the
1991 renewal in refusing to renew the license.

5. Palo's claim that it did not wilfully violate the rules because it
always corrected the cited violations is unpersuasive. Reversal is
not required on this basis.

Affirmed.

1. ADMINISTRATIVE LAW — ADULT FOSTER CARE FACILITY LICENSING ACT —
   APPEAL.

   The appropriate standard of review by the circuit court in an appeal
   under § 25 of the Adult Foster Care Facility Licensing Act from a
   decision of an administrative agency is review de novo (MCL
   400.725; MSA 16.610[75]).

2. LICENSES — ADMINISTRATIVE LAW — LICENSE VIOLATIONS.

   Section 92 of the Administrative Procedures Act, which addresses the
   suspension, revocation, cancellation, or amendment of licenses,
   does not allow a licensee to avoid an adverse license action when-
   ever compliance is shown by correction of the license violation in
   question (MCL 24.292; MSA 3.560[192]).

3. LICENSES — ADMINISTRATIVE LAW — ADMINISTRATIVE PROCEDURES ACT —
   LICENSE REVOCATION HEARINGS — NOTICE.

   Section 92 of the Administrative Procedures Act provides that before
   commencement of proceedings to suspend, revoke, cancel, or
   amend a license in a nonemergency situation, the licensee must be
   given an opportunity to show compliance with all lawful require-
   ments for retention of the license; a preliminary notice and infor-
   mal opportunity to show compliance with licensing requirements
   must precede the notice and formal hearing in the proceedings to
   suspend, revoke, cancel, or amend the license; when an adverse
   action is taken, a four-step procedure should be followed: first, the
   board should issue personal or written notice, stating facts or con-
   duct that constitute alleged violations; second, the board should
   provide informal opportunity to show compliance with licensing
   requirements; third, if there is no compliance, the board should
   issue a notice of hearing, with this notice "commencing proceed-
   ings"; and, fourth, the board should hold hearings (MCL 24.292;
   MSA 3.560[192]).

4. ADMINISTRATIVE LAW — INTERPRETATIVE STATEMENTS OR RULES.

   An administrative agency's unpromulgated statements or rules that
   merely interpret the underlying statutes or promulgated rules under
   which the agency operates have no force of law, and no sanction
   attaches to the violation of the interpretative statement or rule
   itself, but only to the violation of the underlying statute or promul-
   gated rule; a court may excuse a procedural deficiency if the rule
   in question merely assists the administrative agency in the exercise
   of its discretion and there is no substantial prejudice to the com-
   plaining party.

*Hess & Hess, P.C.* (by *John H. Hess*), for the petitioner.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *H. Daniel Beaton, Jr.,* Assistant Attorney General, for the respondent.

Before: HOOD, P.J., and MACKENZIE and MURPHY, JJ.

PER CURIAM. Petitioner, Palo Group Foster Care, Inc., appeals, by leave granted, an order of the circuit court. That order affirmed an administrative agency decision by respondent, Michigan Department of Social Services, that denied renewal of petitioner's adult foster care facility license. We affirm.

In 1981, petitioner was licensed to operate a twenty-bed adult foster care home in Kent County, Michigan. Petitioner received regular, two-year renewals of its license in 1983, 1985, 1987, 1989, and 1991. In April 1993, however, petitioner was advised that its license would not be renewed. In May, an informal conference was held pursuant to respondent's internal policy manual, known as memorandum DOP 84-05. On June 18, 1993, the director of respondent's Bureau of Regulatory Services mailed to the petitioner a notice of the decision to refuse to renew petitioner's license.

Respondent refused to renew petitioner's license pursuant to § 22(1) of the Adult Foster Care Facility Licensing Act, MCL 400.722(1); MSA 16.610(72)(1). That section provides that the respondent may refuse to renew a license if the licensee has wilfully and substantially violated the act or the rules promulgated under the act. In refusing to renew petitioner's license, respondent relied on three license violation

complaint investigation reports, which alleged various violations of respondent's rules between December 1992 and February 1993. The complaints alleged, among other things, financial exploitation of a resident, failure to provide medication, and failure to provide dry clothing for a resident who was incontinent. Respondent also relied on several previous violations dating back to the mid-1980s. After a hearing, a hearing referee concluded that respondent had established the majority of the "willful and substantial" alleged violations.

Respondent's decision was stayed pending administrative appeal and subsequent appeal to the circuit court. The circuit court ultimately dissolved the stay upon affirming the administrative agency decision. This Court granted leave to appeal, but denied petitioner's request for a stay. Consequently, petitioner's foster care facility has been closed since May 31, 1996.

I

Petitioner first argues that because the appeal to the circuit court was based on § 25 of the Adult Foster Care Facility Licensing Act, MCL 400.725; MSA 16.610(75), the circuit court was obliged to engage in review de novo on appeal. Section 25 provides, in relevant part:

A person aggrieved by the decision of the director following a hearing under section MCL 400.722; MSA 16.610(72) or MCL 400.723; MSA 16.610(73), within 10 days after receipt of decision, may appeal to the circuit court for the county in which the person resides by filing with the clerk of the court an affidavit setting forth the substance of the proceedings before the department and the errors of law upon which the person relies, and serving the director with a

copy of the affidavit. *The circuit court shall have jurisdiction to hear and determine the questions of fact or law involved in the appeal.* [Emphasis added.]

In response, respondent maintains that judicial review of the administrative agency's findings of fact is limited to the "competent, material and substantial evidence" standard set forth in the Michigan Administrative Procedures Act (APA), MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*, and Const 1963, art 6, § 28.

Const 1963, art 6, § 28 provides, in relevant part:

All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. *This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.* [Emphasis added.]

The scope of review provided by § 106 of the APA provides, in relevant part:

(1) *Except when a statute or the constitution provides for a different scope of review,* the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:

\*     \*     \*

(d) Not supported by competent, material and substantial evidence on the whole record. [MCL 24.306; MSA 3.560(206). Emphasis added.]

No Michigan court has previously decided the question of the appropriate standard for a circuit court's

review under MCL 400.725; MSA 16.610(75). The
appropriate standard of review is a question of law,
which we review de novo on appeal. *Rapistan Corp v
Michaels*, 203 Mich App 301, 306; 511 NW2d 918
(1994). A litigant seeking judicial review of a decision
by an administrative agency has three potential ave-
nues of relief: (1) the review prescribed in the statute
applicable to the particular agency; (2) an appeal pur-
suant to the Revised Judicature Act, MCL 600.631;
MSA 27A.631, and Const 1963, art 6, § 28; or (3) the
method of review provided by the APA. *Living Alter-
natives for the Developmentally Disabled, Inc v Dep't
of Mental Health*, 207 Mich App 482, 484; 525 NW2d
466 (1994).

Respondent is correct that under the APA the speci-
fied standard for judicial review is not de novo. *Mich-
igan Waste Systems v Dep't of Natural Resources*,
147 Mich App 729, 735; 383 NW2d 112 (1985). Con-
trary to respondent's argument, however, nothing in
the APA or the Michigan Constitution precludes the
Legislature from providing for review de novo in the
circuit court. In fact, § 28 of article 6 of the constitu-
tion merely establishes the *minimum* review to be
applied, without forbidding more stringent review,
and the standard of review set forth at § 106 of the
APA, expressly does not apply "when a statute . . . pro-
vides for a different scope of review . . . ."

We conclude that the language in MCL 400.725;
MSA 16.610(75), providing that on appeal from an
administrative agency decision under the act, the cir-
cuit court "*shall have jurisdiction to hear and deter-
mine the questions of fact or law involved in the
appeal*," requires circuit courts to engage in a de novo
standard of judicial review. This conclusion finds sup-

port in the Michigan Law Revision Commission's 25th Annual Report (1990), Attachment 1, p 63. In the report, entitled "Judicial Review of Administrative Action," the commission recognized MCL 400.725; MSA 16.610(75) as establishing a de novo standard of review. The commission further discussed § 25 in an endnote to Attachment 1:

> This [statute] is an example of using the contested case hearing provisions [of the APA], but not using the APA judicial review provisions. The method stated is to "appeal" by filing an affidavit and the venue is the circuit in which the person resides. *The scope is apparently de novo, since the statute gives the court jurisdiction to hear and determine all questions of law and fact. [Id.,* p 82, n 129. Emphasis added.]

Although the circuit court erroneously concluded that the statute did not provide for a de novo standard of judicial review, the court indicated that it would, and did, affirm the administrative agency's findings of fact under a de novo standard of review. Accordingly, this issue does not provide a basis for reversal of the circuit court's decision in this case.

II

Petitioner next contends that it was deprived of certain procedural protections afforded a licensee before the administrative termination of a license. In this regard, petitioner argues that it received inadequate preliminary notice of the alleged violations and that it was denied the opportunity to comply, as required by memorandum DOP 84-05, which was promulgated to comply with the requirements of § 92 of the APA, MCL 24.292; MSA 3.560(192), and *Rogers v*

*State Bd of Cosmetology*, 68 Mich App 751; 244 NW2d 20 (1976).

Section 503.7 of DOP 84-05 defines a refusal to renew as an adverse action to be used when a licensee has demonstrated a substantial and wilful noncompliance with the rules or the law. Section 92 provides that before commencement of proceedings to suspend, revoke, cancel, or amend a license, the licensee must be given an opportunity to show compliance with all lawful requirements for retention of the license.[1] In *Rogers, supra*, this Court held that a preliminary notice and informal opportunity to show compliance with licensing requirements must precede the notice and formal hearing in the proceedings to suspend, revoke, cancel, or amend the license. When an adverse action is taken, a four-step procedure, in accordance with the interpretation of § 92 of the APA in *Rogers, supra*, should be followed by the respondent before effecting a refusal to renew the terms or status of a license.

Pursuant to DOP 84-05, § 503.7, the first step of the procedure requires that respondent send a notification letter of the "facts or conduct constituting the alleged violations of the act or rules." We have reviewed the record and find that the April 7, 1993, warning letter, which petitioner admitted receiving, sufficiently summarized all "the facts and conduct" of the alleged violations.

---

[1] In accordance with § 92 of the APA, DOP 84-05, § 503.71, provides an exemption to the requirement that a licensee be allowed to show compliance when respondent finds "that the public health, safety or welfare requires emergency action . . . ." In this case, however, there is no indication that respondent considered this case as an emergency situation.

The second step, which evidently was not followed by respondent, provides that, in cases not involving "noncorrectable" licensing violations, the respondent should provide the licensee with the opportunity to show compliance by *either* correcting the violations or submitting an acceptable plan of correction, *or* showing that the violations did not occur. Correctable violations occur

> [w]hen serious and willful violations of the act or rules or a pattern of ongoing non-compliance have been substantiated by the department's investigation, and the violations are such that they are correctable by the licensee . . . . [Dop 84-05, § 503.72.]

If compliance is demonstrated by the licensee, no further action is taken by the respondent. Dop 84-05, § 503.7.[2] (A noncorrectable violation is by its very nature, considered to be wilful and substantial.)

In petitioner's case, the April 7, 1993, warning letter only provided an opportunity to show compliance by demonstrating that the licensing violations did not occur. It failed to also include the option of showing compliance by correcting the violations or submitting an acceptable plan of correction. As a result, petitioner contends that, because the violations in this case did not involve "noncorrectable" violations and petitioner showed that all the violations were corrected, no further adverse action should have been taken by respondent.

---

[2] The first two steps of the four-step procedure are considered to be "informal" compliance procedures; only when a licensee has failed to show compliance are steps three and four, the "formal" steps, initiated. Dop 84-05, § 503.71.

In addressing this claim below, both the hearing referee and the circuit court noted that in *Marrs v Bd of Medicine*, 422 Mich 688, 696; 375 NW2d 321 (1985), the Michigan Supreme Court rejected the proposition that § 92 of the APA allows a licensee to avoid an adverse license action whenever compliance is shown by correction of the license violations in question:

> Dr. Marrs contends that upon his showing that the practices objected to had ceased and that there was no likelihood of repetition, the proceedings against him should have been dismissed. We agree with the Court of Appeals interpretation of the applicable statutory provision, that is, the purpose of the informal proceedings is to provide an opportunity to dispute unwarranted charges prior to the initiation of formal proceedings. Thus, MCL 24.292; MSA 3.560(192) is a procedural safeguard. We disagree with Dr. Marrs that upon a showing by the licensee that violations have ceased and that regulations will be followed in the future the board is required to dismiss the complaint. Although the board has the option of terminating proceedings, it is not obligated to do so.

Petitioner attempts to distinguish the *Marrs* decision by noting that the *Marrs* case did not involve any "rules . . . equivalent to DOP 84-05," that the requirements of the APA yield to the requirements of the Adult Foster Care Facility Licensing Act and the "rules promulgated thereunder," and that the *Marrs* case did not involve a "two-year renewal requirement."

Petitioner's arguments, however, are not persuasive. First, respondent's internal policy manual, DOP 84-05, is not an administrative "rule" promulgated under the Adult Foster Care Facility Licensing Act. As noted by the hearing referee, the administrative rules promulgated under the act were specifically revised

in 1984 to remove language that would allow licensees to retain their licenses by merely correcting any violations. Second, the fact that the act requires licensees to renew their licenses every two years is not a basis for distinguishing *Marrs*. Whether license violations result in premature revocation, suspension, or nonrenewal of a license, the requirements of § 92 of the APA remain the same.

Finally, petitioner's claim that DOP 84-05 creates enforceable procedural due process rights, where § 92 of the APA does not, overlooks the fact that an administrative agency's unpromulgated interpretative statements or rules that merely interpret the underlying statutes or promulgated rules under which the agency operates have no force of law, and no sanction attaches to the violation of the interpretative statement or rule itself, but only to the violation of the underlying statute or promulgated rule. *Boyd v Civil Service Comm*, 220 Mich App 226, 235-237; 559 NW2d 342 (1996). Moreover, a court may excuse a procedural deficiency if the rule in question merely assists the administrative agency in the exercise of its discretion and there is no substantial prejudice to the complaining party. *West Bloomfield Hosp v Certificate of Need Bd*, 452 Mich 515, 524; 550 NW2d 223 (1996).

On the basis of the foregoing, we conclude that the fact that respondent arguably violated its internal rule by denying petitioner the opportunity to show at an informal hearing that it had corrected or had plans to correct the violations is not a basis for reversal. *Marrs, supra.*

III

Petitioner also argues that an adult services worker and a former county director were prejudiced by personal bias because of the ethnicity and higher education of petitioner's owner. Due process requires the right to an impartial decisionmaker. *Crampton v Dep't of State*, 395 Mich 347, 351; 235 NW2d 352 (1975); *Michigan Intra-State Motor Tariff Bureau, Inc v Public Service Comm*, 200 Mich App 381, 391; 504 NW2d 677 (1993). Petitioner, however, has failed to present any convincing evidence to support its allegations that it was denied renewal of its operating license because of bias and prejudice. As both the hearing referee and the circuit court found, petitioner's claims are purely speculative and unsupported by any evidence.

IV

Petitioner next contends that, because respondent previously renewed petitioner's license, respondent was estopped from claiming that any of the alleged license violations that occurred before petitioner's last license renewal in 1991 constituted wilful and substantial noncompliance. Thus, the hearing referee and the circuit court exceeded the scope of review by considering any of the pre-1991 violations. The only authority petitioner cites in support of this argument is an April 1993 proposal for decision and opinion of another hearing referee that recommended the reversal of a license revocation decision in another case, *In re Greenville Acres Adult Care Home, Inc*, in which the hearing referee stated:

Other matters were raised during the hearing, however, the tribunal ruled that because the department issued a reg-

ular license to Greenville in 1988 it could not allege viola-
tions as far back as 1985 were wilful or substantial and
such allegations could not be considered as a basis for
revoking the license in 1990.

However, as correctly noted by the hearing referee
in this case, the *Greenville* case is distinguishable
because no postrenewal violations were established
in that case. Petitioner makes no attempt to address
or refute the hearing referee's interpretation of the
*Greenville* decision. "It is not enough for an appellant
in his brief simply to announce a position or assert an
error and then leave it up to this Court to discover
and rationalize the basis for his claims, or unravel
and elaborate for him his arguments, and then search
for authority either to sustain or reject his position."
*Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388
(1959). Moreover, the record supports that respon-
dent also relied on numerous post-1991 violations, in
refusing to renew petitioner's license. We therefore
conclude that this claim does not provide a basis for
reversal.

V

Finally, petitioner argues that the various pos-
trenewal and prerenewal violations alleged in this
case do not show that petitioner "willfully and sub-
stantially" committed the violations within the mean-
ing of MCL 400.722(1); MSA 16.610(72)(1).[3] Specifi-

---

[3] MCL 400.722(1); MSA 16.610(72)(1) provides:

The department may deny, suspend, revoke, or refuse to renew a
license, or modify a regular license to a provisional license, if the
licensee falsifies information on the application for license or *will-
fully and substantially* violates this act, the rules promulgated
under this act, or the terms of the license. [Emphasis added.]

cally, petitioner argues that the hearing referee's interpretation of the word "willfully" held petitioner to a negligent or strict liability standard because, under the definition, all the licensees *should know* the rules and the licensee is responsible for occurrences outside its control.

We initially note that many of the violations alleged in this case, such as the financial exploitation of a resident, the failure to provide medication, and the failure to provide dry clothing for a resident who was incontinent, involved much more than mere negligence on the part of petitioner's staff. As such, we find petitioner's argument on this point largely academic.

In any event, we find petitioner's claim that it did not wilfully violate the rules because it always corrected the cited violations unpersuasive. As the hearing referee found, although petitioner made certain facility improvements upon receiving citations or warnings, violations continued to occur. We further find that, contrary to petitioner's claim, the involved staff's misconduct was not beyond the control of petitioner's owner. As the hearing referee noted, although petitioner's owner was ill, he admitted being aware of the involved staff member's shortcomings as early as September 1992, yet left that person in charge of the facility until January 31, 1993, even though the owner apparently was well enough by late December 1993 to personally inspect the premises in response to the complaints being investigated at that time. We therefore conclude that reversal is not required on this basis.

Affirmed.