# Order

Michigan Supreme Court
Lansing, Michigan

July 7, 2009

138100

LORRAINE HAYES,
        Plaintiff-Appellee,

v

KIMBERLY LANGFORD,
        Defendant-Appellant.
_____/

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

SC: 138100
COA: 280049
Wayne CC: 06-610484-NO

On order of the Court, the application for leave to appeal the December 9, 2008 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

MARKMAN, J. (*dissenting*).

Plaintiff sued defendant, a 911-emergency operator, for gross negligence and intentional infliction of emotional distress (IIED). Defendant answered plaintiff's 911 calls after plaintiff had been shot in the head and chest by her boyfriend, and plaintiff alleged under both claims that defendant's conduct during these calls caused plaintiff emotional injury. The trial court dismissed both claims on summary disposition, but the Court of Appeals reinstated plaintiff's IIED claim. Although plaintiff undoubtedly suffered in a disastrously tragic event, the only issue is whether plaintiff has established a prima facie claim of IIED. In my opinion, she has not, and thus the trial court properly dismissed this claim. Accordingly, I respectfully dissent from this Court's order to deny leave to appeal.

To establish a prima facie case for IIED, a plaintiff must show "(1) The defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." *Walsh v Taylor*, 263 Mich App 618, 634 (2004); see also *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 602 (1985). For conduct to be "extreme and outrageous conduct," it must be

> so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. A defendant is not liable for mere

> insults, indignities, threats, annoyances, petty oppressions, or other trivialities. [*Lewis v LeGrow*, 258 Mich App 175, 196 (2003) (quotation marks and citations omitted).]

This understanding of "extreme and outrageous conduct" sets a high threshold for such conduct, which is not met by mere "inconsiderate and unkind" behavior. *Roberts*, 422 Mich at 603.

The record reveals no genuine factual dispute regarding defendant's conduct, because the two calls were recorded and transcribed. Rather, defendant's questions and tone during these calls reflect her initial disbelief that plaintiff's emergency was genuine. This disbelief arose out of plaintiff's overall demeanor and the nature of the situation she described, which, in my judgment, might conceivably raise questions with any 911 operator that the call was not genuine. When plaintiff first called 911, her voice did not reflect any sense of urgency or distress. Instead, plaintiff's voice remained measured and monotone throughout the call. Additionally, defendant's second question to plaintiff was, "Are you male or female?" to which plaintiff responded, "I'm a male; I'm a female." Defendant then asked, "Which one?" and plaintiff responded, "My name is Lorraine." Plaintiff then told defendant that the person who had shot her in the "temple" was still there standing next to her. When defendant asked plaintiff to put him on the phone, plaintiff was unable to do so. This brief sequence of events, lasting approximately one minute, explains defendant's disbelief that plaintiff had really been shot.

Because of her skepticism, defendant questioned the veracity of plaintiff's emergency. The manner in which defendant questioned plaintiff may arguably have been "inconsiderate and unkind," but it was not "outrageous in character." Defendant's job required her to make sure incoming calls were genuine in order to prevent unnecessary dispatches of limited emergency services, and defendant's continued disbelief that plaintiff had truly suffered a gunshot wound to the head was not altogether unreasonable. Defendant necessarily had to inquire about what she viewed as suspicious aspects of plaintiff's circumstances. In the end, defendant initiated emergency services to the address provided by plaintiff after only a few seconds of delay.[1]

---

[1] Unfortunately, emergency services proved slow in responding, because plaintiff had called from a cell phone, which does not allow the 911 system to generate a street address, and the police had difficulty locating plaintiff's home because the addresses in her neighborhood were handwritten and difficult to read. However, a second telephone call from plaintiff several minutes later resulted in defendant informing plaintiff that emergency medical services had been deployed, while clarifying plaintiff's location.

When legislators assess appropriate punishments for persons who abuse emergency services, or who make fake calls, they would do well, in my judgment, to take into consideration the seconds of delay that are added to response times in cases such as the instant one.

Consequently, defendant's conduct, in my judgment, cannot fairly be described as "utterly intolerable in a civilized community." Indeed, we live in a society in which 911 calls are regularly made for inappropriate purposes and in which there are insufficient public resources to respond to every frivolous call, yet still be able to effectively respond to genuine emergencies. Thus, defendant's questions, even if asked in the wrong *tone*, were not under the circumstances unreasonable, much less "extreme and outrageous."

CORRIGAN and YOUNG, JJ., join the statement of MARKMAN, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 7, 2009

_Corbin R. Davis_
Clerk