HEINDLMEYER v OTTAWA COUNTY CONCEALED
WEAPONS LICENSING BOARD

Docket No. 255738. Submitted September 8, 2005, at Grand Rapids.
Decided September 20, 2005, at 9:05 a.m.

Joseph Heindlmeyer appealed in the Ottawa Circuit Court a denial
by the Ottawa County Concealed Weapons Licensing Board of his
application for a concealed pistol license. The court, Calvin L.
Bosman, J., first ruled that the petitioner was entitled to a hearing
de novo and that the board had the burden of proving by clear and
convincing evidence that the petitioner should be precluded from
receiving the license, then, after a hearing de novo, reversed the
decision of the board and ordered the board to issue the petitioner
a concealed pistol license. The board appealed by leave granted.

The Court of Appeals *held*:

The circuit court was mandated by the concealed pistol licens-
ing act, MCL 28.421 *et seq.*, to conduct a hearing de novo and
render its own independent determination with respect to whether
there was clear and convincing evidence presented to justify
precluding a license pursuant to MCL 28.425b(7)(n). The circuit
court did not err in ordering the board to issue a concealed pistol
license to the petitioner and in reversing the board's denial of the
petitioner's application for a license.

1. MCL 28.425b(7) provides that a concealed weapon licensing
board shall issue a license to an applicant to carry a concealed
pistol if the board determines that the circumstances enumerated
in § 425b(7)(a) through (n) exist. Subsection 7(n) requires that
issuing a license is not detrimental to the safety of the applicant or
to any other individual.

2. MCL 28.425d(1) provides that an appeal to the circuit court
of a denial of a license shall be determined by a review of the board
record for error, except that if the decision of the board was based
on grounds specified in § 425b(7)(n), as it was in this case, the
appeal shall be by hearing de novo.

3. A hearing de novo pursuant to § 425d(1) entails an indepen-
dent evidentiary hearing followed by an independent ruling based

on the evidence presented at the hearing and contemplates a decision by the circuit court that may result in reversing the decision of the board.

4. The circuit court correctly determined, in light of the legislative policy to liberalize the issuance of concealed pistol licenses, that an application for a license must be presumed to satisfy § 425b(7)(n) in the absence of a showing to the contrary, and that the board had the burden of rebutting the presumption by clear and convincing evidence at the hearing de novo.

5. The circuit court correctly concluded that the board had not presented at the hearing de novo clear and convincing evidence that the petitioner is currently mentally ill, dangerous, or otherwise unsafe such that the application should be denied under § 425b(7)(n).

Affirmed.

WEAPONS — CONCEALED PISTOL LICENSES — CONCEALED WEAPONS LICENSING BOARDS — APPEAL.

A denial by a concealed weapons licensing board of an application for a concealed pistol license on the basis of a determination that the issuance of a license will be detrimental to the safety of the applicant or any other individual may be appealed in the circuit court, which shall conduct a hearing de novo at which the board bears the burden of presenting clear and convincing evidence rebutting the presumption that issuance of a license will not be detrimental to safety (MCL 28.425b[7][n], 28.425d[1]).

*Law Offices of James T. Simmons, P.C.* (by *James T. Simmons*), for Joseph Heindlmeyer.

*Silver & Van Essen, P.C.* (by *Douglas W. Van Essen*), for the Ottawa County Concealed Weapons Licensing Board.

Before: SMOLENSKI, P.J., and MURPHY and DAVIS, JJ.

MURPHY, J. Respondent, the Ottawa County Concealed Weapons Licensing Board, appeals by leave granted the judgment of the circuit court ordering the board to issue petitioner a concealed pistol license sought under the concealed pistol licensing act (CPLA),

MCL 28.421 *et seq.* The circuit court's ruling effectively reversed the board's denial of petitioner's application for a license. The board presents two arguments on appeal. First, it contends that the circuit court erred in failing to review the board's decision pursuant to the "clearly erroneous" standard found in MCL 28.425d(2). Second, the board maintains that its decision to deny petitioner's request for a license was not clearly erroneous, where there was clear and convincing evidence that granting petitioner a license would be detrimental to petitioner's safety or the safety of others as specified in MCL 28.425b(7)(n). The board points to petitioner's mental health history as the basis for denying him a license. We disagree with both arguments presented by the board and hold that the circuit court was statutorily mandated under MCL 28.425d(1) to conduct a hearing de novo and render its own independent determination with respect to whether there was clear and convincing evidence precluding the issuance of a license pursuant to MCL 28.425b(7)(n). Furthermore, we conclude that the circuit court did not err in ordering the board to issue petitioner a concealed pistol license and in reversing the board's denial of petitioner's license application. Accordingly, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Petitioner, a resident of Ottawa County and a reserve deputy sheriff for Allegan County, applied for a concealed pistol license on July 9, 2001. He appeared before the board on four occasions in pursuance of a license, appearing for a final time on January 17, 2002. Petitioner had previously offered to obtain a psychological evaluation at the board's request, and he subsequently forwarded to the board two favorable reports relative to a psychiatric examination and a psychological examina-

tion, which reports the board received before the January 2002 hearing. The board reviewed these reports and, at the hearing, noted several concerns regarding petitioner's mental health.

The board's chairperson, county prosecutor Ronald Frantz, summarized petitioner's mental health history on the record:

> Based on my review of the information that I have, in June of 1989, you were hospitalized. The reports indicate . . . that it was a voluntary hospitalization when you were in ROTC [Reserve Officers Training Corps]. The reports that you've provided to us indicated that there was some kind of diagnosis either schizo phrenoform disorder, I'm not clear which, and no medical records or mental records clarify what happened in June of 1989.
>
> And the next event is early in December of 1989, you were hospitalized at Pine Rest, your mother petitioned you in on an involuntary basis, she signed the petition. She indicates in her petition that you had been treated by Dr. Henry Mulder, I believe from Holland Community Hospital, for some time prior to the actual commitment petition.
>
> She indicated that there was active talk of suicide, that you held some kind of explosive device to you as some kind of a threat to ward off, I presume, law enforcement from taking you into involuntary custody, and as a result of that commitment procedure beginning, there were some diagnoses reached.
>
> One of those from Dr. David Johns at Holland Hospital is that you suffered from depression with suicidal ideation. Another diagnosis from Dr. John Sneed at Pine Rest was [that] this is a case of major depression with suicidal ideation.
>
> And Dr. Sneed, in his report, cited some acts of violence that apparently had occurred at Pine Rest. He did mention the need of—the need for six staff members to subdue you on some occasion at the hospital. He mentioned, at least at some point, you barricaded yourself in the room. That you

tried to smash a window, and that you secreted a fork, screwdriver, and a wire for whatever purpose.

Dr. Dane Vamarious, I believe[] it is, also indicated that you suffered from major depression with psychotic features indicating paranoia in parentheses. In his report he indicated that you expressed thoughts about blowing up the hospital staff with a pipe bomb and suicidal ideation.

Based on your behavior at Pine Rest, a new application for hospitalization was signed by Judith Kilmer, who was a nurse, and that resulted in you being transferred, I believe, to Kalamazoo Regional Psychiatric Hospital again in December of 1989. There you were diagnosed by Dr. Chong Kim, with major depression with psychotic features. And . . . she noted in the report, "increasing depression, agitation, and hostility[.]"

On December 21 of 1989, an alternative treatment order was signed, and I believe this occurred probably at the courtroom in [the] Kalamazoo Regional Psychiatric Hospital, and I believe in all likelihood, [attorney] Mike Reister was representing you at that time. That resulted in, as I understand it, in [sic] a transfer of care to Dr. Henry Mulder at Holland Community Hospital. I don't know from the records whether not [sic] you actually were admitted to Holland Hospital or not. But I believe you admitted in the past that was the case for a brief period of time. And, ultimately, you were placed under the supervision of Community Mental Health.

After recounting this history, Frantz proceeded to discuss the two recent mental health evaluations that petitioner had obtained. These evaluations were obtained for the specific purpose of supporting petitioner's application, and they were conducted by Dr. Hoeksma and Dr. Gribben. Both evaluations were favorable to petitioner and suggested that he was mentally competent to possess a concealed pistol license.

Prosecutor Frantz noted his belief that the two evaluations were based on false information. He ob-

served that neither expert's report was consistent with petitioner's previous mental health history. According to Frantz, Dr. Hoeksma's psychological report suggested that petitioner was not completely forthcoming with relevant mental health information during the evaluation. Moreover, Frantz questioned Dr. Gribben's finding that petitioner had never displayed schizophrenia. He further attacked the credibility of Dr. Gribben's psychiatric report.

Frantz then proceeded to give his own conclusions. He first addressed MCL 28.425b(7)(l), which prohibits the issuance of a concealed pistol license to anyone who has "a diagnosed mental illness at the time the application is made regardless of whether he or she is receiving treatment for that illness."[1] Although Frantz disagreed with much of the information contained in Dr. Hoeksma's and Dr. Gribben's reports, he stated that he was in no position to conclude that petitioner was mentally ill at the time of his application.

Frantz then addressed MCL 28.425b(7)(k), which prohibits the issuance of a license to anyone who has been "subject to an order of involuntary commitment in an inpatient or outpatient setting due to mental illness." Frantz noted that petitioner had been committed in 1989 pursuant to a petition signed by his mother. However, Frantz concluded that because the 1989 "petition" for commitment was legally different than an "order" of involuntary commitment, § 425b(7)(k) was not applicable.

Finally, Frantz discussed MCL 28.425b(7)(o), which has since been renumbered as subsection 7(n) pursuant to 2002 PA 719. Except for a minor deviation irrelevant

---

[1] MCL 28.425b(11) provides, "The concealed weapon licensing board shall deny a license to an applicant to carry a concealed pistol if the applicant is not qualified under subsection (7) to receive that license."

to this case, there were no substantive changes as a result of the amendment, and for the purposes of this opinion we shall make reference to § 425b(7)(n), which provides:

> (7) The concealed weapon licensing board shall issue a license to an applicant to carry a concealed pistol within the period required under this act after the applicant properly submits an application under subsection (1) and the concealed weapon licensing board determines that all of the following circumstances exist:
>
> * * *
>
> (n) Issuing a license to the applicant to carry a concealed pistol in this state is not detrimental to the safety of the applicant or to any other individual. A determination under this subdivision shall be based on clear and convincing evidence of repeated violations of this act,[2] crimes, personal protection orders or injunctions, or police reports or other clear and convincing evidence of the actions of, or statements of, the applicant that bear directly on the applicant's ability to carry a concealed pistol.

In addressing subsection 7(n), Frantz referred to evidence that petitioner had constructed a pipe bomb on one occasion and had threatened to blow up Pine Rest Hospital on another occasion. Additionally, he again cited the references in petitioner's file to suicidal ideations and violent tendencies. Frantz suggested that although the passage of time was a factor in his consideration, he was inclined to vote to deny petitioner's application pursuant to MCL 28.425b(7)(n).

One of the other members of the board briefly agreed with Frantz's analysis, and the third member of the

---

[2] The prior version of this subsection did not include a reference to "repeated violations of this act," but, instead, referenced "civil infractions." 2000 PA 381; see also Michigan Compiled Laws Annotated (West 2004) Historical and Statutory Notes following MCL 28.425b.

board made no statement. All three members of the board voted to deny petitioner's application, although the particular statutory ground for the denial, while appearing to be § 425b(7)(n), was not specifically cited by the members as the basis for the decision. The board, however, subsequently sent notice indicating that petitioner's application had been denied pursuant to § 425b(7)(n).

Upon denial of the requested license, petitioner timely filed a claim of appeal with the circuit court. MCL 28.425d provides that adverse decisions rendered by the various county concealed weapon licensing boards may be appealed to the circuit courts. At first glance, the statutory language of § 425d appears internally inconsistent, providing, in relevant part:

> (1) If the concealed weapon licensing board denies issuance of a license to carry a concealed pistol, or fails to issue that license as provided in this act, the applicant may appeal the denial or the failure to issue the license to the circuit court in the judicial circuit in which he or she resides. The appeal of the denial or failure to issue a license shall be determined by a review of the record for error, except that if the decision of the concealed weapon licensing board was based upon grounds specified in section 5b(7)(n) that portion of the appeal shall be by *hearing de novo*. Witnesses in the hearing shall be sworn. A jury shall not be provided in a hearing under this section.

> (2) If the court determines that the denial or failure to issue a license was *clearly erroneous*, the court shall order the concealed weapon licensing board to issue a license as required by this act. [Emphasis added.]

Because the statute seems to provide two different standards of review for the circuit court—both "de novo" and "clearly erroneous"—petitioner brought a motion asking the circuit court to set forth the procedure to be followed on appeal.

In an order dated April 9, 2003, the circuit court stated that "[b]y definition *hearing de novo* precludes a 'clearly erroneous' standard for review." Thus, the court determined that, because petitioner's application had been denied under § 425b(7)(n), petitioner was statutorily entitled to a hearing de novo with the right to present new evidence and testimony. The circuit court further concluded that the "clear and convincing evidence" standard, applicable to the board under subsection § 425b(7)(n), would also apply to 'the circuit court's hearing de novo as well.

The circuit court's hearing de novo on petitioner's concealed pistol license application was held on February 5, 2004. During opening statements, counsel for the board argued that the court should review petitioner's application under the mental illness provision of § 425b(7)(l) as well as subsection 7(n). Counsel for petitioner responded by citing the circuit court's prehearing order, limiting the scope of the hearing de novo to § 425b(7)(n). The court determined that it would only consider petitioner's application under § 425b(7)(n), which was the only subsection relied on by the board in denying the application, but that mental health evidence would nonetheless be admissible if it was otherwise relevant to the analysis under subsection 7(n).

Upon being called as a witness, petitioner testified that he had been diagnosed with mental illnesses on three previous occasions. The first of these occasions was in July 1989, when petitioner was discharged from the ROTC. Petitioner returned home to Holland, Michigan, and underwent a month-long period of hospitalization for mental illness. In December 1989, petitioner again suffered from mental illness, barricading himself in an upstairs room of his mother's house in Holland. A

police officer who responded to the scene in 1989 testified that petitioner threatened to kill himself with a pipe bomb that he had constructed. After petitioner was disarmed, he was taken into custody and underwent psychological hospitalization at Pine Rest. Petitioner admitted that he threatened and attacked Pine Rest hospital staff members when they asked him to remove his shoelaces. After petitioner acted out against staff members, Pine Rest transferred petitioner to the Kalamazoo Psychiatric Hospital for several days. Upon being released from the Kalamazoo facility, petitioner was admitted to Holland Hospital where he received further psychiatric treatment.

Approximately a year later, petitioner enlisted in the Marine Corps. Petitioner testified that he lied on his enlistment application regarding his mental health history. Petitioner testified that soon after enlisting, his drill instructor noticed possible suicidal tendencies and referred him to the Naval Psychiatric Hospital. Soon thereafter, the Marine Corps discovered that petitioner had lied about his mental health history, and it discharged him for fraudulent enlistment.

Following his discharge from the Marine Corps, petitioner apparently again returned home to Holland, where his mother petitioned for his involuntary commitment to another psychiatric facility. Petitioner testified that he was paranoid at this time and that he probably needed help. However, according to petitioner, he was not schizophrenic or depressed. Rather, petitioner testified that he was simply disappointed that his planned military career had failed.

Petitioner testified that nothing similar to these events could happen again because he had learned a great deal about coping with stress and negative thoughts in the intervening years. Petitioner testified

that he still has several stressors in his life, but they do not affect him adversely and he is able to cope with them. Since the events of 1989 and 1990, petitioner has graduated from college and married, and he now has three children. Petitioner started a knife-sales business and became a reserve deputy, a position in which he carries a firearm while on duty.

Petitioner testified that he has not undergone psychological or psychiatric treatment since his marriage began, with the exception of the two evaluations conducted at the request of the board. Petitioner believes that the favorable evaluations of Dr. Hoeksma and Dr. Gribben are accurate portrayals of his current psychological health.

Petitioner further testified that he is able to own firearms responsibly. Before the amendment of the CPLA in 2001, petitioner obtained two concealed pistol licenses for the purposes of hunting and target shooting. Moreover, even since the board's January 2002 rejection of petitioner's application, he has obtained several permits to purchase handguns.

Petitioner was questioned by counsel for the board regarding a switchblade knife that he had sold through his knife-sales business in 2002. Petitioner testified that he is aware that the law, in general, prohibits selling switchblade knives in Michigan. However, petitioner believed that he was exempt from this prohibition due to his status as a "bona fide dealer of Benchmade Knife Company." Further, petitioner testified that he has never been charged with violating this statute or convicted of illegally selling switchblades.

After petitioner's testimony, counsel for petitioner called four additional witnesses—two individuals who serve with petitioner as fellow reserve deputies, peti-

tioner's wife, and the boyfriend of petitioner's sister. All four testified that petitioner is not violent and is a responsible, productive citizen. Notably, petitioner's wife, who works as a registered nurse in the neuroscience unit of a hospital, testified that she is familiar with psychological disorders, has reviewed her husband's mental health records, and has not seen any indication of mental illness in her husband since they have been married. Petitioner's wife further testified that she is completely comfortable with her husband owning firearms and would be equally comfortable should he obtain a concealed pistol license. Following the testimony, the circuit court indicated that it would consider the evidence and issue a written opinion.

On April 8, 2004, the court issued its written opinion. The circuit court stated that during the preceding 13 years, "there has not been a single incident disclosed by the evidence which would suggest petitioner is suffering from mental illness or engaged in any activity which might be considered as being a threat to himself or others." The court concluded that the board had "failed to show by clear and convincing evidence that issuing petitioner a license to carry a concealed pistol in this state is detrimental to the safety of himself or others." The circuit court ordered the board to "issue petitioner a license to carry a concealed weapon."

The board filed a motion for reconsideration, but the court denied the motion, declaring that "this [c]ourt is steadfast in its opinion that the Board has not presented 'clear and convincing evidence' that petitioner remains a threat to himself or others today."

The board sought leave to appeal the circuit court's order to this Court, and the application was granted.

## II. ANALYSIS ON APPEAL

### A. OUR STANDARDS OF REVIEW

Whether a statute requires that the circuit court apply a particular standard of review is a question of law, which this Court reviews de novo. *Palo Group Foster Care, Inc v Dep't of Social Services*, 228 Mich App 140, 145; 577 NW2d 200 (1998). When an administrative ruling is reviewed de novo by the circuit court, this Court reviews the circuit court's decision for clear error. *Dep't of Civil Rights ex rel Johnson v Silver Dollar Cafe*, 441 Mich 110, 117; 490 NW2d 337 (1992); *Glennon v State Employees' Retirement Bd*, 259 Mich App 476, 478; 674 NW2d 728 (2003).[3] This Court will overturn the circuit court's decision only if left with the definite and firm conviction that a mistake has been committed. *Id.*

### B. CPLA—BACKGROUND AND GENERAL PROVISIONS

Unless a statutory exception applies, which is not the case here, a person wishing to carry a concealed pistol in Michigan must apply for a license to the concealed weapon licensing board in the county where the applicant resides. MCL 28.422(1); MCL 28.425b(1). Such boards are established in each county. MCL 28.425a. Each licensing board is comprised of the county sheriff or his or her designee, the county prosecuting attorney or his or her designee, and the director or a representative of the director of the department of state police. MCL 28.425a(1). The county prosecuting attorney serves as chairperson. MCL 28.425a(3). A majority of

---

[3] MCR 2.613(C) additionally provides, "Findings of fact by the trial court may not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it."

the members of a licensing board must agree in order to grant or deny a concealed pistol license application. MCL 28.425a(3). The legislative intent with regard to the CPLA is, in part, "to allow law abiding residents to obtain a license to carry a concealed pistol[.]" MCL 28.421a.

A licensing board "shall issue" a concealed pistol license to an applicant who has properly submitted the application materials, provided that all the enumerated statutory grounds for granting the license are satisfied. MCL 28.425b(7). The first 13 grounds are based on objective criteria, such as the age of the applicant, whether the applicant has ever been subject to an order of involuntary commitment, whether the applicant has completed a pistol safety course, and whether the applicant has been convicted of an enumerated offense. MCL 28.425b(7)(a) through (m). The final ground and the provision at issue in the case, § 425b(7)(n), is subjective and subject to discretionary decision making by a licensing board.

### C. DISCUSSION

The board first argues that, although the Legislature intended appeals arising from license denials rendered pursuant to § 425b(7)(n) to be subject to an open record that could be supplemented, it also intended the clearly erroneous standard of review to apply to all appeals, including those challenging a decision predicated on § 425b(7)(n). According to the board, the "de novo" language of § 425d(1) applies only to the "record" for the purposes of the appeal, but does not relate or apply to the standard of review. Instead, the applicable standard of review is "clearly erroneous" as specified in MCL 28.425d(2). Therefore, while the circuit court is authorized to compile a "de novo" record, taking new

testimony and considering new evidence, it is still bound by the deferential "clearly erroneous" standard when reviewing a licensing board's original decision. The board further asserts that, because it did not clearly err in denying petitioner's application for a concealed pistol license, the circuit court should have affirmed the board's denial of the application.

We disagree with the board's argument because its position is contrary to the clear and unambiguous language of the statute. The circuit court correctly held a "hearing de novo" on petitioner's application and properly issued its own independent ruling. The court did not err in refusing to review the board's action under the deferential "clearly erroneous" standard, which, under our construction of the CPLA, applies to license denials under § 425b(7)(a)-(m) only, not subsection 7(n). We begin our analysis by first reciting the well-established and guiding principles of statutory construction.

Our primary task in construing a statute is to discern and give effect to the intent of the Legislature. *Shinholster v Annapolis Hosp*, 471 Mich 540, 548-549; 685 NW2d 275 (2004). The words contained in a statute provide us with the most reliable evidence of the Legislature's intent. *Id.* at 549. In discerning legislative intent, this Court gives effect to every word, phrase, and clause in the statute. *Id.* We must consider both the plain meaning of the critical words or phrases as well as their placement and purpose in the statutory scheme. *Id.* This Court must avoid a construction that would render any part of a statute surplusage or nugatory. *Bageris v Brandon Twp*, 264 Mich App 156, 162; 691 NW2d 459 (2004). " 'The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended.' "

*Shinholster, supra* at 549 (citation omitted). Where the wording or language of a statute is unambiguous, the Legislature is deemed to have intended the meaning clearly expressed, and we must enforce the statute as written. *Id.* "A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002). Statutory language, unambiguous on its face, may be rendered ambiguous through its interaction with and relationship to other statutes. *People v Valentin*, 457 Mich 1, 5-6; 577 NW2d 73 (1998). If statutes can be construed in a manner that avoids conflict, that construction should control the analysis. *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998). "We construe an act as a whole to harmonize its provisions and carry out the purpose of the Legislature." *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 159-160; 627 NW2d 247 (2001).

We now turn to § 425d(1), which provides, in relevant part, "The appeal of the denial or failure to issue a license shall be determined by a review of the record for error, except that if the decision of the concealed weapon licensing board was based upon grounds specified in section 5b(7)(n) that portion of the appeal shall be by hearing de novo." Here, the board's decision rested solely on § 425b(7)(n); therefore, the appeal was to be conducted by "hearing de novo." This necessarily meant, consistent with the plain language of § 425d(1), that there would not be "a review of the record for error." Review of the record for error is thus relegated to denials issued pursuant to § 425b(a)-(m).

We must next determine the meaning of the term "hearing de novo," which is a legal term of art. From

the express language of § 425d(1) itself, we know that a "hearing de novo" in licensing board appeals entails the testimony of witnesses before a judge, but not a jury. Albeit in the context of a different statute, this Court has considered the language "hearing de novo" as applied to a circuit court's review of a lower tribunal. The term "hearing de novo" contemplates the taking of new evidence and the proffering of testimony. See *Cochrane v Brown*, 234 Mich App 129, 132; 592 NW2d 123 (1999). A "de novo hearing" requires the circuit court to conduct its own hearing as if no hearing had been conducted in the lower tribunal and to arrive at an independent conclusion. *Marshall v Beal*, 158 Mich App 582, 591; 405 NW2d 101 (1986); see also *Truitt v Truitt*, 172 Mich App 38, 43; 431 NW2d 454 (1988).[4]

In *Prudential Ins Co of America v Cusick*, 369 Mich 269, 284; 120 NW2d 1 (1963), our Supreme Court, speaking generally, stated "that a hearing *de novo* means exactly what the dictionary says, a hearing afresh, and that if, upon exercise of that 'independent' judgment . . . it appears that the appellant burden-bearer has not sustained his burden, either affirmance or remand—for more proof—should be ordered."[5]

---

[4] *Cochrane, Marshall,* and *Truitt* all addressed MCL 552.507, which entitles a party to a hearing de novo in the circuit court on request of the party with respect to a challenge of a referee's recommendation in a domestic relations matter, but which statute did not, at the time those decisions were issued, define or explain what a hearing de novo entailed; a 2004 amendment added a definition. 2004 PA 210; Historical and Statutory Notes for MCL 552.507. We note that the definition added in 2004 requires a "new decision" by the circuit court. MCL 552.507(6).

[5] While the *Cusick* Court was apparently speaking of the term "de novo" in general, as opposed to concentrating on the concept of a "hearing de novo," the Court clearly emphasized that the term "de novo" requires an independent ruling or decision apart from any ruling made by a lower tribunal. Thus, even if one were to conclude that a "hearing de novo" does not encompass an evidentiary hearing anew, which is not

In *Silver Dollar Cafe, supra* at 115-116, a case involving an appeal from the Michigan Civil Rights Commission under Const 1963, art 5, § 29, which provides for an appeal to the circuit court in order for the matter to be "tried de novo," the Court stated:

> The Civil Rights Commission would read out of the clause "tried de novo" the words "de novo" as well as the word "tried."
>
> The term "de novo" has been defined as "anew; afresh; again; a second time; once more; in the same manner, or with the same effect." It has been said:
>
> "The very concept, 'de novo' hearing, means that all matters therein in issue are to be considered 'anew; afresh; over again,' . . . . [*People v Bourdon*, 10 Cal App 3d 878, 881; 89 Cal Rptr 415 (1970).]" [Omission in original.]

It is evident that the judiciary of this state throughout the history of our jurisprudence, as well as the bar, the legal community in general, and the courts of other states,[6] have commonly understood "hearing de novo" as encompassing an evidentiary hearing in which testimony and evidence is presented anew to the court, and in which hearing, minimally, the court renders its own decision based on the evidence, independent of any prior administrative or lower tribunal ruling. The term "hearing de novo" has meaning in the law. There may be no review of the record created by the administrative

argued by the board and which is inconsistent with the statutory language, the term "de novo" in and of itself mandates independent decision making.

[6] A "hearing de novo" contemplates a new and independent decision without any deference to the findings and conclusions previously rendered. *Kansas v Graham*, 275 Kan 176, 182; 61 P3d 662 (2003). A "hearing de novo" is a hearing in which the case is heard as if no action whatsoever had been held before it, with the evidence being heard anew and the appellate tribunal making a determination as though no previous decision had been rendered. *In re Poole*, 136 Vt 242, 245; 388 A2d 422 (1978).

agency, and no deference given to the agency's ruling. Indeed, other than recognizing the existence of the agency's decision that is being challenged, the circuit court proceeds in a manner that is wholly independent and separate from the agency's action. We find it proper to attribute these well-accepted principles regarding "hearing de novo" to the statutory language at issue.

"[T]he Legislature is deemed to legislate with an understanding of common-law adjudicatory principles." *Nummer v Dep't of Treasury*, 448 Mich 534, 544; 533 NW2d 250 (1995); see also *B & B Investment Group v Gitler*, 229 Mich App 1, 7; 581 NW2d 17 (1998). In the context of a criminal case, our Supreme Court in *People v Riddle*, 467 Mich 116, 125; 649 NW2d 30 (2002), indicated that "[w]here a statute employs the general terms of the common law to describe an offense, courts will construe the statutory crime by looking to common-law definitions." Such an approach is equally applicable in the context of the case before us today. In *People v Couch*, 436 Mich 414, 419; 461 NW2d 683 (1990) (opinion by BOYLE, J.), the Michigan Supreme Court, quoting the United States Supreme Court in *Morissette v United States*, 342 US 246, 263; 72 S Ct 240; 96 L Ed 288 (1952), stated:

> "[W]here [a legislature] borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them." [Alterations in *Couch*.]

Moreover, apart from the case law, our ruling is consistent with the dictionary definition of "hearing de novo." The Supreme Court reiterated in *Griffith v State*

*Farm Mut Automobile Ins Co*, 472 Mich 521, 526; 697 NW2d 895 (2005), that "we accord undefined statutory terms their plain and ordinary meanings and may consult dictionary definitions in such situations." Black's Law Dictionary (7th ed) defines "hearing de novo" as follows:

> 1. A reviewing court's decision of a matter anew, giving no deference to a lower court's findings. 2. A new hearing of a matter, conducted as if the original hearing had not taken place.

Therefore, in the case at bar, we hold that our Legislature used the term "hearing de novo" with the clear intent that the language be accorded its plain and ordinary meaning as reflected in the common law and legal tradition of Michigan and as defined in Black's Law Dictionary, a well-accepted, highly utilized, and much respected legal dictionary. Accordingly, there is to be an independent evidentiary hearing followed by an independent ruling based on the evidence presented at the hearing. Thus, the use of the term "hearing de novo" contemplates a decision or determination by the circuit court that may result in reversing the decision of a licensing board, and which provides authority to the court to order the issuance of a license without the need for the court to rely on the clearly erroneous standard of review of § 425d(2).

Our conclusion is not affected by MCL 28.425d(2), which provides, "If the court determines that the denial or failure to issue a license was clearly erroneous, the court shall order the concealed weapon licensing board to issue a license as required by this act." Because § 425d(1) dictates that the circuit court shall render its own independent ruling following an evidentiary hearing with respect to § 425b(7)(n), there is no need to review or reflect upon the reasoning or factual under-

pinnings for the denial issued by the licensing board; all that matters to the circuit court was that the licensing board denied a concealed pistol license under subsection 7(n) and that a petitioner challenged the decision. By virtue of the language contained in § 425d(1), § 425d(2) is only applicable to license denials under § 425b(7)(a)-(m). One does not reach § 425d(2) where § 425b(7)(n) is involved.

The term "clearly erroneous" has, like "hearing de novo," acquired a well-accepted meaning in our jurisprudence. It too has meaning in the law. " 'A finding is clearly erroneous where, although there is evidence to support the finding, the reviewing court is left with the definite and firm conviction that a mistake has been made.' " *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 531; 695 NW2d 508 (2004), quoting *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 652; 662 NW2d 424 (2003). There is literally a plethora of Michigan appellate opinions that cite, adopt, and rely on this specific definition of "clearly erroneous," and we see no need to cite additional case law for our proposition. The definition expressly contemplates review of the evidence and facts presented to a lower tribunal and review of the tribunal's decision made thereon, or in other words, "review of the record for error." See MCL 28.425d(1)(making clear that "review of the record for error" pertains only to § 425b[7][a]-[m]). Moreover, deference is given to the lower tribunal's findings. This is wholly inconsistent with a "hearing de novo." Attempting to harmonize the "clearly erroneous" standard and the concept of "hearing de novo," as those terms have been defined in the case law, is impossible and unworkable. Further, we hold that the well-established and well-accepted definition of "clearly erroneous," indisputably a legal term of art that has developed over the years through opinions

by this Court and our Supreme Court, was presumptively known and adopted by the Legislature when crafting § 425d. See *Nummer, Riddle,* and *Couch, supra.* Therefore, the plain and unambiguous language of the statute reflects the Legislature's intention that the "clearly erroneous" standard of review be applicable only to denials premised on § 425b(7)(a)-(m), and not subsection 7(n), which is controlled entirely by the "hearing de novo" language found in § 425d(1).[7] Accordingly, the trial court did not err in reaching a conclusion consistent with our ruling.

In light of our ruling regarding the appropriate standards under § 425d, the board's argument that its decision was not clearly erroneous no longer appears relevant. Nonetheless, the essence of the board's argument is that the circuit court improperly reversed the board's decision, irrespective of the standard of review applied. The board's position appears grounded in its belief that petitioner's history of mental illness constituted strong evidence that granting his application for a concealed pistol permit would be detrimental to his safety or to the safety of other individuals. We hold that the circuit court did not err in ruling that § 425b(7)(n) had not been satisfied by clear and convincing evidence.

As we concluded above, the circuit court in this case was required by statute to hold a "hearing de novo," effectively retrying the issue that the board had previously decided under § 425b(7)(n). In so doing, the circuit court properly applied the same "clear and convincing evidence" standard as was applied by the

---

[7] We note that Black's Law Dictionary (7th ed) defines "clearly erroneous" as a standard of review under which "a judgment is reversible if the appellate court is left with the firm conviction that an error has been committed." Again, this definition requires a review of the record for error, giving deference to the lower tribunal, and it is inconsistent with a "hearing de novo."

board in the first instance and as required by the statute. Thus, this issue concerns whether the court erred in its independent or de novo findings based on the record created at the circuit court level.

The circuit court determined, in light of the legislative policy to liberalize the issuance of concealed pistol licenses, that an application must be presumed to satisfy § 425b(7)(n), absent a showing to the contrary. The circuit court determined, consistently with the statutory language, that the board had the burden of rebutting this presumption by clear and convincing evidence when the issue was retried at the hearing de novo.

MCL 28.425b(7)(n) plainly requires "clear and convincing evidence" before a license can be denied on that ground. The clear and convincing evidence standard presents a heavy burden that far exceeds the preponderance of the evidence standard that is sufficient for most civil litigation. *Battaglieri v Mackinac Ctr For Pub Policy*, 261 Mich App 296, 307; 680 NW2d 915 (2004).

The evidence presented during the hearing de novo, as recounted above in the statement of facts, indicated that petitioner has not experienced any mental health problems since the early 1990s. Since that time, petitioner has graduated from college, married, and now has three children. Petitioner's wife, a registered nurse, testified that she has not observed any indication of mental illness in her husband since they married. Petitioner further sought two mental health evaluations at the request of the board, and both evaluations resulted in favorable reports regarding petitioner's current mental health.

Although petitioner owns firearms, the board presented no evidence to suggest that petitioner has been irresponsible or otherwise unsafe with them. In fact,

most of the evidence presented indicated just the opposite. As a reserve deputy sheriff, petitioner is responsible for carrying a firearm while on duty. Petitioner's colleague and petitioner's supervisor from the sheriff's reserve unit both testified that petitioner is responsible with firearms and that they are comfortable around petitioner when he is carrying a gun. Additionally, no problems developed after petitioner was granted previous licenses. Further, petitioner's wife testified that she is comfortable with petitioner's ownership and possession of firearms in their home and around their children.

Required to prove by clear and convincing evidence that petitioner should not receive a concealed pistol permit, the burden on respondent was heavy. In light of the testimony presented during the hearing de novo, and considering the fact that the board could not establish that petitioner is currently mentally ill, dangerous, or otherwise unsafe, the circuit court did not err in finding that the grounds for license denial under MCL 28.425b(7)(n) had not been established by clear and convincing evidence.

### III. CONCLUSION

We hold that the circuit court was statutorily mandated under MCL 28.425d(1) to conduct a hearing de novo and render its own independent determination with respect to whether there was clear and convincing evidence presented to justify precluding the issuance of a license pursuant to MCL 28.425b(7)(n). Furthermore, we conclude that the circuit court did not err in ordering the board to issue petitioner a concealed pistol license and in reversing the board's denial of petitioner's license application.

Affirmed.