# STATE OF MICHIGAN

# COURT OF APPEALS

OUTFRONT MEDIA LLC,

Petitioner-Appellee,

UNPUBLISHED
April 20, 2017

v

DEPARTMENT OF TRANSPORTATION,

Respondent-Appellant.

No. 330855
Wayne Circuit Court
LC No. 15-010275-AA

Before: FORT HOOD, P.J., and JANSEN and HOEKSTRA, JJ.

PER CURIAM.

The present case involves a dispute between plaintiff Outfront Media, LLC and defendant, the Michigan Department of Transportation (MDOT), regarding MDOT's denial of a permit to convert a billboard into a digital sign pursuant to the Highway Advertising Act (HAA), MCL 252.301, *et seq.* Following a hearing, MDOT's denial of the permit was affirmed by an Administrative Law Judge (ALJ). However, Outfront Media sought judicial review of the ALJ's decision, and the circuit court reversed the decision of the ALJ, ordering MDOT to issue a digital permit to Outfront Media. MDOT now appeals to this Court as on leave granted.[1] Because the circuit court clearly erred in its review of the ALJ decision and the decision of the ALJ was supported by competent, material, and substantial evidence, we reverse the decision of the circuit court and reinstate the order of the ALJ.

Outfront Media is the owner of a billboard located along I-96 in Detroit. In March of 2015, Outfront Media submitted an application to MDOT, seeking a permit to convert this static sign into a digital sign under MCL 252.306. Because Outfront Media's sign does not comply with current spacing requirements in the HAA, to make this conversion to a digital sign, the existing sign must constitute a "nonstandard sign," meaning that, although it does not meet current HHA requirements, it was "legally erected before March 23, 1999." MCL 252.302(x). See also MCL 252.306. Documentation submitted by Outfront Media to MDOT in connection with its application for a digital permit listed various dates relating to the erection of the sign, first stating that it had been erected on May 28, 2008 and later stating that it had been

---

[1] *Outfront Media LLC v Dep't of Transportation*, unpublished order of the Court of Appeals, entered April 22, 2016 (Docket No. 330855).

-1-

"completely built on April 7, 1999." MDOT denied the permit request based on the conclusion that the sign could not be converted to digital because it did not conform to current spacing requirements and it had not been erected before March 23, 1999.

Following MDOT's denial, an administrative hearing was held before an ALJ. At this hearing, the parties presented various documents relating to the construction of the existing billboard. These documents showed that Outfront Media[2] sought a permit from MDOT in December of 1998, MDOT issued a permit in February of 1999, the City of Detroit issued a permit in March of 1999, and Outfront Media obtained quotes for work in March of 1999. Among these documents were quotes from Gerald R. Page Corporation, the fabricator of the pipes for the billboard, indicating that the "base column pipe" would be delivered on March 11, 1999. However, no documentation reveals whether the delivery took place as scheduled. Instead, the documents related to work having been performed indicate that the work took place in April of 1999. Specifically, a "job ticket" indicates that "construction" took place on April 7, 1999, painting took place on April 9, 1999, and the job was "finished" on April 14, 1999. Likewise, an invoice from K&K Welding and Services Inc., the company that built the sign, shows a "service date" of April 7, 1999. As detailed on the invoice, the work completed by K&K included unloading steel supplied by Gerald R. Page, building the "complete structure," and installing the "section apron." Finally, the documents show that the electricity for the sign was turned on April 28, 1999.

In contrast to the documentary evidence, Outfront Media offered testimony from Michael Van Haften, who is currently a vice president at Outfront Media. Van Haften had no personal knowledge of the particular sign in question. He could not say if the pipe was delivered by Gerald R. Page as scheduled. Nor could he say from his own personal knowledge when the pipe was installed. Nevertheless, based on industry standards, Van Haften surmised that *if* the pipe was delivered on March 11, 1999, then K&K would have "most likely" unloaded it on March 11 and drilled a hole for the pipe on that day or the following day. Based on these assumptions, Van Haften opined that the pipe would have been cemented in the hole before March 23, 1999, and it would simply have been the "head" of the billboard that was later installed in April. However, Van Haften conceded that he had no personal knowledge of these facts related to the construction of the particular sign in question, and he acknowledged that, with a construction date of April 7, 1999, the hole could have been dug and the cement poured in April of 1999.

Based on the evidence presented, the ALJ concluded that MDOT properly denied Outfront Media's request for a permit because the sign and sign structure had not been "erected" before March 23, 1999. In concluding that Outfront Media's sign and sign structure were not erected before this date, the ALJ made two basic determinations. First, as a matter of law, the ALJ concluded that merely obtaining a permit or soliciting a quote did not satisfy the statutory definition of "erect." Second, as a factual matter, the ALJ concluded that the actual work on the sign and sign structure, e.g., digging the hole and inserting the pole, was not done until April of 1999, after the March 23rd deadline. That is, the ALJ rejected the "possibilities of holes and

---

[2] The sign was actually erected in 1999 by Outfront Media's predecessor Outdoor Systems.

supporting columns" before March 23, 1999, finding that the documentation did not support this argument and that Van Haften's testimony was not credible given his lack of personal knowledge and the mere speculative nature of his testimony.

Outfront Media sought review of the ALJ's decision in circuit court, and the circuit court reversed the decision of the ALJ. In doing so, the circuit court made no effort to articulate the standard applicable to its review of the ALJ's decision. Instead, the circuit court emphasized that it is a "court of equity," and it faulted MDOT for its delay in responding to Outfront Media's request for a permit in 1998, concluding that MDOT contributed to Outfront Media's failure to erect the sign on time. Aside from these equitable considerations, the circuit court concluded that certain "steps" by Outfront Media satisfied the "erect" requirement in the HAA. Specifically, the circuit court reasoned that requesting a permit and possibly digging a hole and installing the base on March 11, 1999, were enough to "erect" a sign before March 23, 1999. For these reasons, the circuit court ordered MDOT to grant the request for a digital permit. MDOT then filed an application for leave to appeal, which this Court granted.

On appeal, MDOT argues that the circuit court failed to review the ALJ's decision under the appropriate standard. In particular, MDOT contends that the circuit court could not reverse the ALJ based on a finding of inequity and that the circuit court could not substitute its judgement for that of the ALJ, particularly in regard to factual findings related to Van Haften's credibility. According to MDOT, the billboard was not "erected" before March 23, 1999 as required by the HAA, meaning that, when reviewed under the appropriate standard, there was no error of law in the ALJ's decision and it was supported by competent, material, and substantial evidence. MDOT thus contends that the circuit court should be reversed. We agree.

This Court reviews "a circuit court's decision on an administrative appeal to determine whether the circuit court applied correct legal principles and whether the court misapprehended or grossly misapplied the substantial-evidence test to the agency's factual findings, which essentially constitutes a clearly erroneous standard of review." *Nason v State Employees' Ret Sys*, 290 Mich App 416, 424; 801 NW2d 889 (2010). "A finding is clearly erroneous where, after reviewing the record, this Court is left with the definite and firm conviction that a mistake has been made." *Vanzandt v State Employees Ret Sys*, 266 Mich App 579, 585; 701 NW2d 214 (2005). In comparison, questions of law, including the proper standard to be applied by the circuit court when reviewing an administrative decision, are reviewed de novo. *Heindlmeyer v Ottawa Co Concealed Weapons Licensing Bd*, 268 Mich App 202, 214; 707 NW2d 353 (2005).

Likewise, statutory interpretation is a question of law, reviewed de novo. *City of Sterling Hts v Chrysler Group, LLC*, 309 Mich App 676, 681; 873 NW2d 342 (2015). The goal of statutory construction is "to discern and give effect to the Legislature's intent." *DiBenedetto v W Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000). Courts begin by examining the plain language of the statute. *Id.* When the language is unambiguous, it is presumed "that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written." *Id.*

Under the HAA, following a formal administrative hearing, an administrative determination is subject to judicial review under the Administrative Procedures Act (APA), MCL 24.201 *et seq.* See MCL 252.323(3); MCL 24.306(1). Notably, the APA does not allow a

circuit "court to set aside an administrative decision it finds inequitable." *Huron Behavioral Health v Dep't of Cmty Health*, 293 Mich App 491, 498; 813 NW2d 763 (2011). Instead, under the APA, "[a] final agency decision is subject to court review but it must generally be upheld if it is not contrary to law, is not arbitrary, capricious, or a clear abuse of discretion, and is supported by competent, material and substantial evidence on the whole record." *Vanzandt*, 266 Mich App at 583. See also MCL 24.306(1). For purposes of this review, evidence qualifies as "competent, material, and substantial" provided that it "is that which a reasonable mind would accept as adequate to support a decision, being more than a mere scintilla, but less than a preponderance of the evidence." *Id.* at 584. In conducting this review, the circuit court "must not substitute its discretion for that of the administrative tribunal even if the court might have reached a different result." *Huron Behavioral Health*, 293 Mich App at 497. "Deference must be given to an agency's findings of fact," particularly with regard to the credibility of witnesses and the resolution of conflicts in the evidence. *Id.* (citations omitted).

In this case, the circuit court clearly erred in its review of the ALJ's decision by improperly injecting equitable considerations, disregarding the ALJ's factual findings, and failing to defer to the ALJ's credibility determinations. By failing to review the ALJ's decision under the correct standard as well as by misapprehending the substantial-evidence test, the circuit court applied incorrect legal principles and its decision was thus clearly erroneous. See *Dignan v Mich Pub Sch Employees Ret Bd,* 253 Mich App 571, 578; 659 NW2d 629 (2002). In particular, to begin with, the circuit court's decision was based in large part on principles of equity arising from its conclusion that MDOT should be held partly responsible for Outfront Media's failure to erect the sign before March 23, 1999. However, as noted, the APA does not allow a circuit "court to set aside an administrative decision it finds inequitable." *Huron Behavioral Health*, 293 Mich App at 498. Quite simply, the circuit court's review was limited as set forth in MCL 24.306(1) and it could not set aside the ALJ's decision merely because it perceived the result as inequitable. See *Huron Behavioral Health*, 293 Mich App at 498.

Aside from its invocation of equity, it is also clear that the circuit court misapprehended and misapplied the appropriate standard of review. The circuit court failed to consider whether the ALJ committed an error of law or whether its decision was supported by competent, material, and substantial evidence. *Vanzandt*, 266 Mich App at 583. Indeed, the circuit court made no mention of the applicable standard of review as set forth in MCL 24.306(1). Instead, the circuit court substituted its judgment for the ALJ and appeared to wholly disregard the ALJ's factual findings, including the ALJ's assessment of Van Haften's credibility. This too was improper. See *Huron Behavioral Health*, 293 Mich App at 498.

More specifically, the parties agree that the legal questions in this case are controlled by the HAA. Under the HAA, given that the billboard in question does not meet current spacing requirements it may only be converted from a static sign to a digital sign if it meets the criteria for a "nonstandard" sign. See MCL 252.306. As defined by statute, a "nonstandard" sign is a "sign" or "sign structure" "legally erected before March 23, 1999" that "is not a nonconforming sign, and does not comply with the spacing requirements in [MCL 252.317(1)], but otherwise complies with [the HAA]." MCL 252.302(x). For purposes of the HAA:

> "Sign" means any outdoor sign, display, device, figure, painting, drawing, message, placard, poster, billboard, or other thing, whether placed individually or

-4-

on a T-type, V-type, back to back, or double-faced display, that is designed, intended, or used to advertise or inform.  [MCL 252.302(hh).]

"Sign structure" means the assembled components that make up an outdoor advertising display, including, but not limited to, uprights, supports, facings, and trim. A sign structure may contain 1 or 2 signs per facing and may be double-faced, back to back, T-type, or V-type.  [MCL 252.302(*ii*).]

Finally, the HAA defines as "erect" as "to construct, build, raise, assemble, place, affix, attach, create, paint, draw, or in any other way bring into being or establish."  MCL 252.302(*l*).

In deciding whether Outfront Media's sign was "erected" before March 23, 1999, the ALJ first made the legal determination that preparatory tasks, such as obtaining permits and quotes for work, did not satisfy the statutory definition of "erect."  This conclusion was not an error of law.  Again, by statute to "erect" is "to construct, build, raise, assemble, place, affix, attach, create, paint, draw, or in any other way bring into being or establish."  MCL 252.302(*l*). Obtaining a permit and soliciting quotes are not among the list of specific activities—i.e., construct, build, raise, assemble, place, affix, attach, create, paint, draw—which fall within the definition of "erect."  Further, it is also clear that, more generally, tasks like obtaining permits or hiring someone to do the work will not actually bring a sign "into being" or serve to "establish" a sign.  Instead, it is the physical tasks that follow—such as constructing, building, raising, assembling, placing, affixing, attaching, creating, painting, and drawing—which lead to the existence of a sign.  In other words, while the definition of "erect" does not purport to provide an exhaustive list of tasks that will "erect" a sign or sign structure, it is clear that activities which "in any other way bring into being or establish" a sign or sign structure must be of a similar nature and quality as those means specifically listed.  Cf. *In re Townsend Conservatorship*, 293 Mich App 182, 189; 809 NW2d 424 (2011).  See also *Manuel v Gill*, 481 Mich 637, 650; 753 NW2d 48 (2008).  It follows that, because the specific terms listed are tasks which result in the actual production of a physical sign, mere preparatory paperwork and planning-related tasks, which do not directly result in the establishment or existence of a sign, do not fall within the definition of "erect."

Consequently, as a matter of law, the ALJ properly concluded that preparatory acts by Outfront Media, such as obtaining permits, leasing property, and soliciting quotes for work, did not constitute the erection of a sign within the meaning of the HAA.  See MCL 252.302(*l*).  To the extent the circuit court concluded otherwise, the circuit court misapplied legal principles, and its decision was clearly erroneous.  See *Nason*, 290 Mich App at 424.

Aside from preparatory tasks, there is the question of activities relating to the actual building of the sign, specifically the question of when Outfront Media undertook the digging of a hole and the placement of the main support pipe.  The ALJ resolved this issue on a factual basis. That is, as a factual matter, the ALJ rejected Van Haften's representations regarding the timeline for digging the hole and placing the pipe.  Based on Van Haften's admitted lack of personal knowledge regarding the construction of the particular sign in question, the ALJ reasonably concluded that Van Haften's testimony was mere speculation and that his assertion that the sign was erected before March 23, 1999 was not worthy of belief.  The credibility of this testimony was a question for the finder of fact.  See *Guerrero v Smith*, 280 Mich App 647, 669; 761 NW2d

723 (2008). And, this credibility determination by the ALJ should have been afforded deference by the circuit court, which the circuit court failed to provide. See *Huron Behavioral Health*, 293 Mich App at 497.

Rather than credit Van Haften's testimony, the ALJ reasonably relied on the documentary evidence submitted by the parties. As discussed, nothing in this documentary evidence indicated that any work had been done before March 23, 1999. At most, quotes from Gerald R. Page indicated that the delivery of pipes was *scheduled* for March 11, 1999. But, nothing in the documentary evidence indicates that this delivery took place as scheduled or that a hole was dug and the pipe installed before March 23, 1999. Instead, the documentary evidence—including the "job ticket" and invoice from K&K Welding—can be seen to reasonably support the conclusion that all work was done in April of 1999. This is particularly true given that, as noted by the ALJ, Van Haften conceded in an email to MDOT that the sign was "completely constructed on April 7, 1999." Overall, considering the entire record, even assuming that digging a hole and installing a pipe satisfies the statutory definition of "erect," there was competent, material and substantial evidence supporting the ALJ's factual determination that the pipe was not "erected" until April of 1999.[3] Consequently, the sign was not a "nonstandard" sign and MDOT properly denied Outfront Media's application for a digital permit.

In sum, the circuit court applied an erroneous standard of review to the ALJ's decision by relying on equity, disregarding the ALJ's well-supported factual findings, and substituting its judgment for that of the ALJ. In actuality, the ALJ's decision was supported by the evidence, and the ALJ's decision should have been upheld. We are left with a definite and firm conviction that a mistake has been made. See *Vanzandt*, 266 Mich App at 596.

Accordingly, we reverse the circuit court and reinstate the decision of the ALJ. Having prevailed in full, MDOT may tax costs pursuant to MCR 7.219.

/s/ Karen M. Fort Hood
/s/ Kathleen Jansen
/s/ Joel P. Hoekstra

---

[3] Given the ALJ's factual determination that the work in question did not take place until April of 1999, we offer no opinion as to whether complete construction of a sign or sign structure is required to "erect" a sign or whether something less, such as digging a hole and installing the main column, will suffice.